October 14, 2015

A & B VALVE AND PIPING SYSTEMS, L.L.C.
KIMZEY CASING SERVICE, LLC
212 Thruway Park Road
Broussard, LA 70518
Attn: Chief Financial Officer

Ladies and Gentlemen:

Pursuant to recent conversations between PNC BANK, NATIONAL ASSOCIATION ("**PNC**"), A & B VALVE AND PIPING SYSTEMS, L.L.C., a Louisiana limited liability company ("**Parent**"), and KIMZEY CASING SERVICE, LLC, a Texas limited liability company ("**Kimzey**" and together with Parent, the "**Borrowers**"), we understand that the Borrowers and certain of their subsidiaries intend to file voluntary petitions for relief (the "**Bankruptcy Proceedings**" and the date of the filing of such petitions, the "**Petition Date**") in the United States Bankruptcy Court for the Western District of Louisiana (the "**Bankruptcy Court**") under the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**"), and the Borrowers are seeking debtor-in-possession financing, the proceeds of which would be used in accordance with the Budget (as hereinafter defined). Based upon those preliminary conversations, this letter sets forth a general overview of the preliminary terms and conditions concerning a potential debtor-in-possession financing for the Borrowers and certain of their subsidiaries, as proposed by PNC (the "**DIP Financing**"). The DIP Financing shall be approved by the Bankruptcy Court pursuant to a financing order that is final under the Bankruptcy Code (the "**Final Financing Order**"), which shall be in form and substance satisfactory to PNC and its counsel.

This overview is not, is not intended to be, and should not be construed as a commitment to lend, nor should it be construed as an attempt to establish all of the terms and conditions relating to the DIP Financing. It is intended only to serve as a guideline for certain terms and conditions and how the DIP Financing documents might be structured, and it is not intended to preclude negotiations within the general scope of these terms and conditions. Any final documentation regarding the DIP Financing will be subject to further due diligence, approval of terms by the Borrowers and PNC, including receipt by PNC of internal credit approval for the DIP Financing, and the preparation, negotiation, execution and delivery of all relevant DIP Financing documentation and is further conditioned upon entry of an appropriate order by the Bankruptcy Court.

| Borrowers: | Parent and Kimzey, each as a debtor and debtor-in-possession in the bankruptcy cases to be filed with the Bankruptcy Court (collectively, the "**Borrowers**"). |
| --- | --- |
| Guarantors: | The DIP Financing would be fully and unconditionally guaranteed by SHEFFIELD HOLDINGS, LP, a Pennsylvania limited partnership, and SHEFFIELD GP, LLC, a Pennsylvania limited liability company, each as a debtor and debtor-in-possession in the bankruptcy cases to be filed with |

| | |
|---|---|
| | the Bankruptcy Court (collectively, the "***Guarantors***" and, together with the Borrowers, the "***Loan Parties***"). |
| **DIP Lender:** | PNC Bank, National Association (in such capacity, the "***DIP Lender***"). |
| **DIP Agent:** | PNC Bank, National Association (in such capacity, the "***DIP Agent***"). |
| **Amount and Type of Facility:** | After the entry of the Final Financing Order, the DIP Financing will consist of (y) a revolving line of credit of up to $8,500,000 (the "***Maximum Revolving Advance Amount***") at any one time outstanding, inclusive of any amounts outstanding under the revolving line of credit under the Pre-Petition Credit Facility (as hereinafter defined) (the "***DIP Revolving Credit Facility***"); and (z) a roll-up of the pre-petition Term Loan and Equipment Loans (as such terms are defined in the Pre-Petition Credit Facility) (collectively, the financial accommodations described in clauses (y) and (z), the "***DIP Facility***"). |
| **Closing Date:** | On or before October __, 2015 (the "***Closing Date***"). |
| **Borrowing Availability:** | Availability under the DIP Revolving Credit Facility will be calculated as the lesser of: |
| | (x) the Maximum Revolving Advance Amount, *less* the sum of aggregate outstanding Revolving Advances (both pre-petition Advances and Advances made under the DIP Facility); and |
| | (y) the Formula Amount (as defined in the Pre-Petition Credit Facility), |
| | and shall be made available to the Borrowers from the date of the entry of an interim financing order (the "***Interim Financing Order***") under the Bankruptcy Code until the date of the entry of the Final Financing Order, subject to and as limited by the budget attached to the Interim Financing Order, as superseded by the Budget upon the entry of the Final Financing Order. |
| | The availability under the DIP Revolving Credit Facility shall be reduced by reserves as may be established by the DIP Agent in its sole discretion from time to time to reflect, among other things, contingencies or risks that may materially affect the DIP Collateral (as hereinafter defined), the liens of the DIP Agent, for the benefit of the DIP Lender, in such DIP Collateral, or the business and operations of the Borrowers, including, without limitation, a reserve for the Carve-Out (as hereinafter defined). |

2

| | |
|---|---|
| **DIP Facility Fees:** | On the Closing Date (as hereinafter defined), the Borrowers shall pay the DIP Agent a non-refundable, fully earned commitment fee of $100,000. |
| | The Pre-Petition Agent (as hereinafter defined) shall continue to receive its facility fees, collateral evaluation fees and collateral monitoring fees as and when due and payable, which may be paid from any adequate protection payments made in respect of the Pre-Petition Obligations (as hereinafter defined). |
| **Interest Rate and Payment Terms:** | Interest shall be paid monthly on all outstanding advances under the DIP Facility at a per annum floating rate equal to the sum of (a) the Alternate Base Rate (as defined in the Pre-Petition Credit Facility), *plus* (b) three percent (3.00%) (the "***Non-Default Interest Rate***"). |
| | Effective immediately upon the occurrence of an Event of Default (as hereinafter defined) unless waived in writing by the DIP Agent, interest on the outstanding loans under the DIP Facility shall accrue interest at a rate that is two percent (2.00%) per annum in excess of the Non-Default Interest Rate. |
| | All interest under the DIP Financing documents would be calculated on the basis of a year of 360 days for the actual number of days elapsed. |
| **Pre-Petition Obligations:** | The Borrowers owe certain obligations (collectively, the "***Pre-Petition Loans***," and holders of the Pre-Petition Loans shall be referred to as the "***Pre-Petition Lenders***") under that certain Revolving Credit, Term Loan and Security Agreement dated as of September 22, 2010, among the Borrowers (collectively, the "***Pre-Petition Borrowers***" and each, a "***Pre-Petition Borrower***"), the financial institutions which are now or which hereafter become a party thereto (collectively, the "***Pre-Petition Lenders***" and each individually a "***Pre-Petition Lender***"), and PNC Bank, National Association, as agent for the Pre-Petition Lenders (in such capacity, the "***Pre-Petition Agent***"), as amended, restated, supplemented or otherwise modified from time to time (the "***Pre-Petition Credit Facility***"), which Pre-Petition Loans are guaranteed by the Guarantors (collectively, the "***Pre-Petition Guarantors***" and each, a "***Pre-Petition Guarantor***"). |
| | Prior to the entry of the Final Financing Order, the Revolving Advances made under and as defined in the Pre-Petition Credit Facility shall be subject to a "creeping" roll-up. Upon entry of the Final Financing Order, the Borrowers' obligations to the Pre-Petition Lenders under the Pre-Petition Credit Facility shall be deemed obligations under the DIP Facility, and all obligations of any Pre-Petition Guarantor with respect |

3

| | |
|---|---|
| | to the obligations under the Pre-Petition Credit Facility shall be reaffirmed and/or remain in place as to the DIP Facility. Prior to the entry of the Final Financing Order, the Term Loan and Equipment Loans made under and as defined in the Pre-Petition Credit Facility shall accrue interest at a per annum floating rate equal to the sum of (a) the Alternate Base Rate (as defined in the Pre-Petition Credit Facility), *plus* (b) three and three-quarters percent (3.75%), but shall otherwise be payable in accordance with the Pre-Petition Credit Facility.<br><br>The obligations of the Pre-Petition Borrowers and the Pre-Petition Guarantors under the Pre-Petition Credit Facility are referred to herein as the "***Pre-Petition Obligations***" and such Pre-Petition Obligations are secured by, among other things, a first priority lien on, and security interest in, all of the assets and properties of the Pre-Petition Borrowers and the Pre-Petition Guarantors (the "***Pre-Petition Collateral***"). |
| **Replacement Liens:** | As adequate protection, the Final Financing Order shall provide that the Pre-Petition Agent, for the benefit of the Pre-Petition Lenders, be granted a replacement lien to secure the Pre-Petition Obligations on the Pre-Petition Collateral for and to the extent of the post-petition use of Pre-Petition Collateral and proceeds thereof and for any post-petition diminution in value of Pre-Petition Collateral (the "***Replacement Lien***"). The Replacement Lien shall be subordinate only to (i) the liens granted to the DIP Agent, for the benefit of the DIP Lender, to secure the obligations under the DIP Facility, (ii) the amount of the Carve-Out, and (iii) other Permitted Liens (as hereinafter defined). The Pre-Petition Agent, for the benefit of the Pre-Petition Lenders, shall share such Replacement Liens in the same priority as provided for in the Pre-Petition Credit Facility. |
| **Term:** | Until the earliest to occur of the following dates: (a) the closing date of the sale of all or substantially all of the assets of the Loan Parties (or any of them) pursuant to Section 363(d) of the Bankruptcy Code (the "***363 Sale***"); (b) December 31, 2015; (c) the effective date of a confirmed plan of reorganization or liquidation that provides for indefeasible payment in full, in cash of all obligations under the DIP Facility or is otherwise acceptable to the DIP Agent; (d) the date on which the DIP Agent accelerates the obligations under the DIP Facility; (e) the entry of an order by the Bankruptcy Court granting (i) relief from the automatic stay permitting foreclosure of any assets of any Loan Party with a value in excess of $100,000, (ii) the granting of any motion by the DIP Agent to terminate the use of cash |

4

| | |
|---|---|
| | collateral or lift the stay or otherwise exercise remedies against any cash collateral, (iii) entry of an order approving the appointment of a trustee or an estate fiduciary or an examiner with special powers, or (iv) any order granting the dismissal or conversion of any Loan Party's Chapter 11 case; (f) the filing or support by any Loan Party of a plan of reorganization that does not provide for indefeasible payment in full, in cash of all obligations under the DIP Facility; and (g) the date on which any of the Loan Parties proposes to the Bankruptcy Court a sale of all or substantially all of any of their respective assets not approved by the DIP Agent and the Pre-Petition Agent. The date on which the earliest of clauses (a) through (g) above occurs being referred to hereinafter as a "***Termination Date***"). On the Termination Date, the DIP Facility shall be deemed terminated, and the DIP Lender and the DIP Agent shall have no further obligation to provide financing pursuant to the DIP Facility or the DIP Financing documents. |
| **Use of Proceeds:** | The proceeds of the DIP Financing shall be used solely for: (a) the payment of normal operating expenses consistent with the budget to be attached to the DIP Financing documents (the "***Budget***") and consistent with that attached hereto as **Exhibit A**; (b) the payment of interest, fees and expenses relating to the DIP Financing and professional fees of the DIP Agent and the DIP Lenders; (c) the payment of the Carve-Out; and (d) the payment, as adequate protection to the Pre-Petition Agent, for the benefit of itself and the Pre-Petition Lenders, of all fees and expenses incurred by the Pre-Petition Agent and the Pre-Petition Lenders in connection with the Bankruptcy Proceedings. No loan proceeds or cash collateral or any part of the Carve-Out shall be used directly or indirectly by any Loan Party, any committee or any other person or entity to object to challenge or contest the post-petition obligations of the Loan Parties or the DIP Agent's post-petition liens, the Pre-Petition Obligations or the Pre-Petition Agent's pre-petition liens, to bring any action or claim against the DIP Agent, Pre-Petition Agent, DIP Lender or Pre-Petition Lenders, to modify the terms of the Interim Financing Order or the Final Financing Order, to interfere with the rights of the Pre-Petition Agent and Pre-Petition Lenders to credit bid, or to seek any affirmative relief against the DIP Agent, the DIP Lender, the Pre-Petition Agent or the Pre-Petition Lenders. |
| **Cash Management Collections and Remittances:** | The Borrowers shall use a cash management system that is the same as or substantially similar to their pre-petition cash management system. Any material changes from such pre- |

5112816v11

| | |
|---|---|
| | petition cash management system must be acceptable to the DIP Agent. The Interim Financing Order and the Final Financing Order shall provide the DIP Lender with a valid and enforceable first-priority lien and security interest on the cash held in the Borrowers' bank accounts. |
| **Budget and Variances:** | The Budget shall be prepared and updated by the Borrowers on a weekly basis showing receipts and disbursements projected through January 3, 2016, which shall be in form and substance, and with such detail, acceptable to the DIP Agent in its sole discretion. |
| | Actual amounts for (i) total sales, cash receipts and cash disbursements from operations line items (which shall not include any professional fees) may not vary from the applicable Budget by more than fifteen percent (15%) for each week during any Budget period or more than ten percent (10%) on a cumulative basis for that portion of the Budget period then ended, and (ii) with respect to professional fees, such fees may not vary from the applicable Budget by more than fifteen percent (15%) for each week during any Budget period or more than ten percent (10%) on a cumulative basis per professional fee line item for that portion of the Budget period then ending (and each professional that may receive professional fees shall be reflected on its own Budget line item). The Budget shall also include a list of all expenditures committed to or assumed by the Loan Parties during each weekly period (whether or not requiring cash disbursements during the relevant period). The Budget may be amended with the prior written consent of the DIP Agent. The Borrowers shall represent that the Budget (including any proposed amendments thereto) has been prepared in good faith based upon assumptions believed by the Borrowers and their chief restructuring advisor ("**CRA**") to be reasonable. |
| | The Borrowers shall provide to the DIP Agent and the DIP Lender a weekly budget report (by the third (3rd) business day of each week) showing actual sales, weekly receipts and disbursements for the immediately prior week and a comparison of all actual receipts and disbursements to the budgeted receipts and disbursements (including the variances referenced above) on both a weekly basis and a cumulative basis from the Petition Date through the last day of the immediately preceding week (the "***Budget Variance Report***"). The Budget Variance Report will be in such form as will permit the DIP Agent and the DIP Lender to (a) determine all sales and collections for the prior weekly period and cumulatively from the petition date; (b) determine amounts |

6

| | |
|---|---|
| | spent during the prior weekly period and cumulatively from the petition date, (c) determine all expenditures assumed and committed to during the prior weekly period and cumulatively from the Petition Date; and (d) identify amounts available to be spent or committed to be spent or intended to be assumed in each of the categories set forth in the Budget during the remaining term of the Budget, with such Budget Variance Report to be in form and substance, and with such detail, acceptable to the DIP Agent in its sole discretion. |
| **Final Financing Order (as to liens):** | In connection with the DIP Financing, the DIP Agent and the DIP Lender will require one or more orders of the Bankruptcy Court, in form and substance satisfactory to the DIP Agent in its sole discretion, authorizing and approving the DIP Financing pursuant to Bankruptcy Rule 4001(d) and:<br><br>(a)    finding that the DIP Lender has extended credit to the Borrowers in good faith within the meaning of Section 364(e) of the Bankruptcy Code;<br><br>(b)    stipulating on behalf of the Loan Parties that (i) the Pre-Petition Obligations are legal, valid and binding obligations of the Loan Parties and are enforceable in accordance with the terms of the Pre-Petition Credit Facility (other than in respect of the stay of enforcement arising from Section 362 of the Bankruptcy Code); (ii) no offsets, defenses or counterclaims to any of the Pre-Petition Obligations exist, and no portion of the Pre-Petition Obligations are subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (iii) the Pre-Petition Obligations are secured by the Pre-Petition Collateral by means of a valid, first priority, senior, fully perfected and non-avoidable security interest and lien on the Pre-Petition Collateral, excluding only Permitted Liens, and the Loan Parties agree not to contest the same. Such lien finding shall be subject to the rights of any official committee(s) or of any other party in interest with standing to commence a contested matter or adversary proceeding to object to or challenge such finding by the later of (1) five (5) days following entry of the Final Financing Order and (2) thirty (30) days following the retention of counsel, if any, by such official committee (the "***Challenge Period***"). Absent any timely objection, the lien finding shall automatically be final at the end of the Challenge Period. This process (including the requirements of the Bankruptcy Court's affirmation of the lien finding if there is an objection) is |

| | |
|---|---|
| | herein referred to as the "***Lien Validation Process***"; |
| | (c)    granting post-petition liens to the DIP Agent for the benefit of the DIP Lender on the Pre-Petition Collateral and the Post-Petition Collateral (as hereinafter defined) to secure the DIP Financing. The term "***Post-Petition Collateral***" means all of the assets and properties of the Loan Parties, as of and after the Petition Date, subject to the terms hereof; |
| | (d)    granting superpriority administrative claim status (senior to any other superpriority administrative claims) to the DIP Agent and the DIP Lender with respect to all obligations of the Loan Parties under the DIP Facility, to the extent provided by Section 507(b) of the Bankruptcy Code; |
| | (e)    providing that the Loan Parties acknowledge and agree that neither they nor anyone claiming by, through or under them, have any claims, offsets, defenses, counterclaims, causes of action of whatsoever kind or nature against the Pre-Petition Lenders, the Pre-Petition Agent, the DIP Lender, or the DIP Agent, or their respective officers, directors, employees, agents, advisors, or attorneys arising out of or related to the Pre-Petition Obligations or the DIP Financing and, if any such exist, they are fully released without prejudice to the rights, if any, of any official unsecured creditor's committee as to the Lien Validation Process during the Challenge Period; |
| | (f)    providing that the DIP Agent shall act as collateral agent for all liens granted for the benefit of the DIP Agent and the DIP Lender and any and all replacement liens granted for the benefit of the Pre-Petition Agent and Pre-Petition Lenders; and |
| | (g)    providing that all pre-petition and post-petition liens and security interests of the DIP Agent, the DIP Lender, the Pre-Petition Agent and the Pre-Petition Lenders pursuant to the Lien Validation Process shall be valid and perfected upon the entry of such Final Financing Order without any recordation or filing of any nature whatsoever. |
| **Final Financing Order (as other matters):** | The Final Financing Order, taken together with the documents relating to the DIP Financing, shall also contain such provisions as the DIP Agent requires for financing and cash collateral orders, including, without limitation, the following: |

8

(a)   no rights, claims, liens, or the like of the DIP Agent or the DIP Lender with respect to the DIP Financing being able to be modified in any plan of reorganization or subsequent financing;

(b)   the DIP Agent and DIP Lender reserving their rights to seek Bankruptcy Court modification of the Final Financing Order for cause;

(c)   the automatic stay being modified to the extent necessary to permit the DIP Agent and the DIP Lender to exercise their rights and remedies on or after the Termination Date or otherwise to effect the Final Financing Order; *provided* that the DIP Agent give the Borrowers five (5) days' written notice of its intent to exercise the rights or remedies under the DIP Financing documents, subject to the provisions below with respect to Loan Parties' rights to an emergency stay hearing;

(d)   in the event any or all of the provisions of the Final Financing Order are modified, amended or vacated by a subsequent order of the Bankruptcy Court or any other Court, the DIP Agent and DIP Lender being entitled to the protections provided in Section 364(e) of the Bankruptcy Code, and no such appeal, modification, amendment or vacation affecting the validity and enforceability of any advances made or the liens or priority authorized or created thereby (including, for purposes hereof, the liens and security interests granted to the DIP Agent, the Replacement Liens, and the superpriority administrative claim status granted to the DIP Agent, the DIP Lender, the Pre-Petition Agent and the Pre-Petition Lenders);

(e)   nothing in the Final Financing Order affecting the DIP Agent's, the DIP Lender's, the Pre-Petition Agent's, or the Pre-Petition Lenders' claims against third parties;

(f)   waivers of relief, claims (including administrative claims), charges and limitation of the DIP Agent's and DIP Lender's or the Pre-Petition Agent's and Pre-Petition Lenders' rights under Sections 105, 506(c), 510, 544, 547, 548, 549 and 553(b) of the Bankruptcy Code or otherwise (at least as to the Final Financing Order and subject to the Lien Validation Process), and, if any such exist, they are fully released to the extent permitted by the Bankruptcy Court and applicable law;

(g)   the DIP Agent, the DIP Lender, the Pre-Petition Agent, and the Pre-Petition Lenders each being entitled to all of

9

the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply;

(h) the Loan Parties not proposing or supporting any Chapter 11 plan that is not conditioned upon the indefeasible payment in full, in cash of all obligations under the DIP Facility;

(i) the Loan Parties not in any way priming or seeking to prime the liens and security interests provided to the DIP Agent or the Replacement Liens provided to the Pre-Petition Agent by offering a subsequent lender or a party-in-interest a superior or *pari passu* lien or claim pursuant to Section 364(d) of the Bankruptcy Code or otherwise;

(j) binding the Loan Parties and any successors and assigns, including any subsequently appointed Chapter 7 or 11 trustee, to the terms of the Final Financing Order;

(k) finding that none of the DIP Agent, the DIP Lender, the Pre-Petition Agent, or the Pre-Petition Lenders control any Loan Party;

(l) approval of the various aspects of the DIP Financing and the Pre-Petition Credit Facility, including the current payment during the bankruptcy cases of fees and expenses of the DIP Agent, the DIP Lender, the Pre-Petition Agent and the Pre-Petition Lenders and the fees and expenses of their attorneys and advisors and the indemnification provisions thereof;

(m) the rights under the Final Financing Order being in addition to the rights existing as of the Petition Date;

(n) the Final Financing Order being entered no later than twenty-five (25) days after the Petition Date or later if so agreed by the DIP Agent;

(o) the reservation of rights in the event of the occurrence of an Event of Default or the occurrence of the Termination Date;

(p) the reservation of rights to seek additional adequate protection;

(q) the reservation of rights for the DIP Lender to assign all of its rights, claims and obligations under the DIP Financing and the Pre-Petition Credit Facility and related documents;

(r) the Loan Parties providing access and information to the

5112816v11

| | |
|---|---|
| | DIP Agent, the DIP Lender, and the Pre-Petition Agent, and their agents and advisors; and |
| | (s) all payments made with respect to the DIP Financing being free and clear of all liens and encumbrances, and shall be made without any offset, abatement, withholding or reduction whatsoever. |
| **DIP Collateral:** | Subject to the Carve-Out, the DIP Facility (including accrued interest, fees, costs and expenses) shall be secured, subject and subordinate to any valid, perfected prior liens and security interests existing as of the Petition Date, other than those in favor of the Pre-Petition Lenders, by first priority senior and priming liens and security interests in all of the Loan Parties' assets and properties, including, without limitation, all of the Loan Parties' existing and future acquired property and interests of any nature whatsoever, real and personal, tangible and intangible, accounts receivable, general intangibles, payment intangibles, supporting obligations, investment property, commercial tort claims, inventory, rolling stock, machinery, equipment, subsidiary capital stock, chattel paper, documents, instruments, deposit accounts, contract rights, and tax refunds of the Loan Parties, and all proceeds thereof, and all bankruptcy-related causes of action and any recovery thereon, including but not limited to all causes of action under Chapter 5 of the United States Bankruptcy Code, including, but not limited to, Section 506(c), Sections 544 through 550, and Section 553 or other applicable law (subject to Lien Validation Process), in each case pursuant to Section 364(c) and (d) of the Bankruptcy Code (collectively, the "***DIP Collateral***"). |
| | No liens under Section 364 of the Bankruptcy Code or otherwise shall be permitted on the Post-Petition Collateral, except for (i) such pre-petition and post-petition liens agreed to in writing as being expressly permitted by the documentation relating to the DIP Financing; (ii) the liens and security interests securing the DIP Financing and Pre-Petition Obligations; and (iii) the liens granted to the DIP Agent for the benefit of the DIP Agent and the DIP Lender and the Pre-Petition Agent for the benefit of the Pre-Petition Agent and Pre-Petition Lenders under the Final Financing Order for adequate protection and use of cash collateral (collectively, the "***Permitted Liens***"). |
| | To the extent that all cash and checks of the Loan Parties currently in their possession, bank accounts, lockbox accounts or otherwise, and the proceeds thereof, if any, are proceeds of the DIP Collateral, upon entry of the Final Financing Order, |

11

| | |
|---|---|
| | the relevant Loan Parties shall deliver such proceeds to the DIP Agent, and thereafter the Loan Parties and any successor to the Loan Parties, including, without limitation, any successor trustee or trustees, shall immediately deliver any and all payments or proceeds realized upon the sale, liquidation, collection or disposition of the Post-Petition Collateral or Pre-Petition Collateral, including, without limitation, the proceeds of sales authorized pursuant to Section 363 of the Bankruptcy Code or any plan of reorganization which come into their possession to the DIP Agent in the form received (together with any necessary endorsements thereto) for deposit into the disbursement account maintained by the Loan Parties with PNC and as designated by the DIP Agent (the "*Disbursement Account*"). |
| **Super-Priority Administrative Claim:** | Subject to the Carve-Out, amounts owed by the Loan Parties to the DIP Agent and the DIP Lender pursuant to the DIP Facility (including all accrued interest, attorney's fees and other fees, costs and expenses) shall constitute, in accordance with Section 364(c)(1) of the Bankruptcy Code, a claim having priority over any or all administrative expenses of the kind specified in, among other sections, Sections 105, 326, 330, 331, 503(b), 506(c), 507(b), and 726 of the Bankruptcy Code. |
| **Administrative Expense Carve Out:** | The Budget is expected to include an administrative expense carve out (collectively, the "*Carve-Out*") acceptable to the DIP Agent and all of the DIP Lenders for (a) incurred or accrued and pending applications for professional fees and expenses of the Loan Parties' professionals and professionals for any official committee of unsecured creditors incurred in the bankruptcy cases, not to exceed $250,000 in the aggregate for the first forty-five (45) days following the Petition Date and, following the Bankruptcy Court's entry of the Sale Procedures Order, an additional $250,000, to the extent allowed by the Bankruptcy Court and incurred prior to the Termination Date; (b) professional fees and expenses of the Loan Parties' professionals and professionals for any official committee of unsecured creditors incurred in the bankruptcy cases after the Termination Date to the extent allowed by the Bankruptcy Court for the payment of costs of winding up the Loan Parties' Chapter 11 case, not to exceed $50,000; and (c) allowed United States Trustee administrative expenses pursuant to 28 USC §1930(a)(b). No part of the Carve-Out shall be used to object to or contest any post-petition lien or post-petition obligations or to challenge (as opposed to investigate) any pre-petition credits or pre-petition lien or to |

5112816v11

| | |
|---|---|
| | otherwise seek affirmative relief against the DIP Agent, the DIP Lender, the Pre-Petition Agent or the Pre-Petition Lenders. |
| **Conditions Precedent to the DIP Financing:** | The obligation to provide the DIP Financing shall be subject to satisfaction of the following conditions:<br><br>(a) Entry of the Interim Financing Order in form and substance satisfactory to the DIP Agent after notice given and a hearing conducted in accordance with Bankruptcy Rule 4001(c);<br><br>(b) Execution and delivery by all appropriate parties of all other loan and security documentation, all satisfactory in form and substance to the DIP Agent;<br><br>(c) Payment of all fees and other amounts due and payable on the Closing Date as described in the "DIP Facility Fees" section hereof, including the payment of the outstanding and currently estimated fees and expenses of the DIP Agent's and the Pre-Petition Agent's attorneys and advisors, with all such fees remaining subject to Bankruptcy Court approval;<br><br>(d) Receipt by the DIP Agent of a liquidation budget, in form and substance satisfactory to the DIP Agent, which shall be the Loan Parties' budget in the event any Chapter 11 case is converted to a Chapter 7 case;<br><br>(e) Receipt by the DIP Agent of the Budget, in form and substance satisfactory to the DIP Agent, such Budget to include, but not be limited to, an itemization on a weekly basis of all material expenditures proposed to be made, assumed or committed to during the term of the DIP Financing;<br><br>(f) Receipt by the Pre-Petition Agent and Pre-Petition Lenders of a release (which shall be satisfactory in form and substance to the Pre-Petition Agent and may be provided for in the Final Financing Order) of all claims and causes of action of the Loan Parties against the Pre-Petition Agent, the Pre-Petition Lenders and their affiliates, officers, directors, employees, attorneys and other representatives from any and all claims and causes of action of every kind and nature that the Loan Parties may hold against such released parties, including but not limited to those claims in respect of the Pre-Petition Obligations and assurance that the Pre-Petition Obligations shall be subject to the Lien Validation Process; |

5112816v11

(g) The DIP Agent shall have received a Budget to actual cash flow report for the prior week and for the post-petition period as of the last day of the prior week, together with supporting documentation and other information as the DIP Agent may require;

(h) If not sooner terminated, concurrent termination of the commitments to extend credit under the Pre-Petition Credit Facility;

(i) Entry of an order approving the retention of a CRA on terms and with a scope acceptable to the DIP Agent;

(j) In the reasonable judgment of the DIP Agent, no material adverse change or material disruption has occurred after the date hereof in the financial, banking or capital markets generally (including, without limitation, the markets for loans to or debt securities issued by companies similar to the Borrowers), which has had or could reasonably be expected to have a material adverse effect on the DIP Lender;

(k) The Loan Parties shall have provided the documentation and other information to the DIP Lender that is required by regulatory authorities under applicable "know your customer" and anti-money-laundering rules and regulations, including, without limitation, the Patriot Act;

(l) All first-day motions and related orders (including, without limitation, any motions related to the DIP Financing, cash management, sale order and sale procedures referred to below, and any critical vendor or supplier motions) entered by the Bankruptcy Court in the bankruptcy cases shall be in form and substance reasonably satisfactory to the DIP Agent and its counsel;

(m) The DIP Agent shall be named as loss payee (property/casualty) and additional insured (liability) in respect of all insurance policies of the Loan Parties, and riders to provide 30 days' advance notice to DIP Agent in the event of any non-renewal, cancellation or amendment thereof shall be included in all such policies;

(n) All documents and instruments required or, in the opinion of the DIP Agent, desirable to perfect the DIP Agent's security interest in the collateral described under the heading "DIP Collateral" herein shall have been executed and delivered and, if applicable, be in proper form for filing, and none of such collateral shall be

14

subject to any other pledges, security interests or mortgages, except Permitted Liens (including junior liens securing the Pre-Petition Obligations);

(o)   The DIP Agent shall hold valid and perfected security interests in and liens upon the Pre-Petition Collateral and the Post-Petition Collateral as collateral security for the DIP Facility and the Pre-Petition Agent (or the DIP Agent as its collateral agent) shall hold valid and perfected Replacement Liens as collateral security for the adequate protection obligations;

(p)   The Loan Parties shall comply in full with the notice and other requirements of the Bankruptcy Code in a manner acceptable to the DIP Agent and its counsel, with respect to the Interim Financing Order and the Final Financing Order.  The Bankruptcy Court shall have entered the Final Financing Order, in form and substance satisfactory to the DIP Agent, authorizing the secured financing under the DIP Financing on the terms and conditions contemplated by this summary of terms granting to the DIP Agent (for the benefit of the DIP Lender) the security interests and liens and super-priority administrative expense claim status described above, modifying the automatic stay subject to the requirement that the DIP Agent give the Borrowers five (5) days' written notice of its intent to exercise the rights or remedies under the DIP Financing documents, and other provisions required by the DIP Agent and its counsel.  The DIP Lender  shall not provide any loans other than those authorized under the Final Financing Order unless, on or before the twenty-fifth (25th) day following the date of the Petition Date or such later date as the DIP Agent may agree, such Final Financing Order shall have been entered, there shall be no appeal or other contest with respect to either of such orders, and the time to appeal or contest such orders shall have expired;

(q)   No trustee, examiner, receiver or the like shall have been appointed or designated with respect to any of the Loan Parties or their respective businesses, properties or assets, and no motion shall be pending seeking any such relief; and

(r)   The DIP Agent shall, in its sole discretion, be satisfied that the Loan Parties have taken all action and are demonstrating progress towards closing the 363 Sale in accordance with the Milestones.

15

| | |
|---|---|
| **Additional Condition to each Borrowing under the DIP Revolving Credit Facility** | The DIP Agent shall, in its sole discretion, be satisfied that the Loan Parties have taken all action and are demonstrating progress towards closing the 363 Sale in accordance with the Milestones. |
| **Representations and Warranties:** | Customary for debtor-in-possession financing agreements as determined by the DIP Agent in its sole discretion, together with such others as may be required by the DIP Agent following completion of its due diligence. |
| **Affirmative and Negative Covenants:** | Affirmative and negative covenants customarily included in debtor-in-possession financing agreements as determined by the DIP Agent in its sole discretion, including, but not limited to, (a) customary and reasonable reporting requirements as reasonably required by the DIP Agent in its sole discretion; (b) compliance with Budget covenants consistent with the section entitled "Budget" together with any additional covenants appropriate in the context of the DIP Facility as reasonably required by the DIP Agent in its sole discretion; (c) the Loan Parties shall, from and after the Petition Date, (i) continue to take action and demonstrate progress, satisfactory to the DIP Agent in its sole discretion, toward closing the 363 Sale, (ii) satisfy the terms of each of the Milestones, and (iii) demonstrate progress towards, and work to satisfy, all proposed sale conditions imposed in the asset purchase agreement(s) with respect to the 363 Sale, in each case as determined by the DIP Agent in its sole discretion; and (d) the Loan Parties shall, contemporaneously with closing the 363 Sale, remit the proceeds of such sale to the DIP Agent for immediate application to the obligations under the DIP Facility in accordance with the DIP Financing documents.<br><br>The Loan Parties shall conduct a sale process for the 363 Sale in accordance with the Milestones defined below. Current management of the Loan Parties, together with the Loan Parties' professional advisors, shall oversee the sale process on behalf of the Loan Parties, shall at all times be entitled to take any action necessary or appropriate to conduct the sale process, and shall provide the DIP Agent with access to all potential bidders and other interested parties, and any information provided by the Loan Parties to such parties. |
| **363 Sale Process:** | The Loan Parties shall be required to comply with the following milestones (the "***Milestones***"):<br><br>(a)    Within five (5) days after the Petition Date or such later date on which the DIP Agent consents in writing in its sole discretion, the Loan Parties shall file a motion with the Bankruptcy Court requesting entry of an order (the |

5112816v11

| | |
|---|---|
| | "***Sale Procedures Order***") approving the bidding procedures and auction process to be employed for the 363 Sale and providing for the DIP Agent's and the DIP Lender's right to "credit bid" for all or any portion of the Loan Parties' assets. |
| | (b) On or before the date that is thirty (30) days after the Petition Date, or such later date to which the DIP Agent consents in writing in its sole discretion, the Bankruptcy Court shall have entered the Sale Procedures Order. |
| | (c) On or before December 9, 2015, or such later date to which the DIP Agent consents in writing in its sole discretion, the Loan Parties shall have held an auction in connection with the 363 Sale and in accordance with the provisions set forth in the Sale Procedures Order. |
| | (d) On or before December 16, 2015, or such later date to which the DIP Agent consents in writing in its sole discretion, the Bankruptcy Court shall have entered the order (the "***Sale Order***") in form and substance satisfactory to the DIP Agent that, among other things, approves the 363 Sale. |
| | (e) On or before December 18, 2015, provided that the Bankruptcy Court has waived the stay imposed by Bankruptcy Rule 6004(h) or such later date to which the DIP Agent consents in writing in its sole discretion, the 363 Sale shall have closed, with the proceeds of the 363 Sale paid directly to the DIP Agent to be applied to the obligations under the DIP Facility in accordance with the DIP Financing documents. |
| **Events of Default:** | Customary for debtor-in-possession financing agreements, as determined by the DIP Agent in its sole discretion, which events of default (collectively, "***Events of Default***") are expected to include substantially those events of default included in the Pre-Petition Credit Facility and, without limitation, occurrence of any of the following: |
| | (a) Failure to make any payment under the DIP Facility when due; |
| | (b) Failure to pay any material, undisputed post-petition indebtedness within forty-five (45) days of the date on which such indebtedness is due; |
| | (c) Breach of any covenant of the DIP Facility (including, but not limited to, any failure to achieve any of the Milestones); |

17

(d) Breach of any representation or warranty made by any Loan Party in any DIP Financing document (subject to customary materiality carve-outs);

(e) Any Chapter 11 case of any Loan Party shall be dismissed or converted to a Chapter 7 case or a motion requesting such relief shall have been granted;

(f) A Chapter 11 Trustee shall be appointed in the Chapter 11 case of any Loan Party or the filing of any motion or other pleading requesting such relief which any Loan Party fails to timely oppose;

(g) The filing or support of a proposed plan of reorganization by any Loan Party that does not provide for the indefeasible payment in full, in cash of all of the Loan Parties' obligations under the DIP Facility;

(h) The entry of an order confirming (or the filing of any motion or pleading requesting confirmation of) a plan of reorganization that does not require the indefeasible payment in full, in cash of all of the Loan Parties' obligations under the DIP Facility as of the effective date of the plan;

(i) Any other superpriority claim or lien equal or superior in priority to that granted pursuant to or permitted under the Final Financing Order shall be granted;

(j) Entry of an order by the Bankruptcy Court amending, supplementing, staying, vacating or otherwise modifying the DIP Facility, the Interim Financing Order or the Final Financing Order, without the prior written consent of the DIP Agent, or the filing of a motion or other pleading requesting such relief which any Loan Party fails to timely oppose;

(k) Any attempt by any Loan Party to obtain, or if any other party in interest obtains, an order of the Bankruptcy Court or other judgment, and the effect of such order or judgment is to invalidate, reduce or otherwise impair the DIP Agent's or the DIP Lender's claims, or to subject any of the DIP Collateral to a surcharge pursuant to Section 506(c) of the Bankruptcy Code;

(l) Any Loan Party shall apply for an order substituting any assets for all or any portion of the DIP Collateral, except as provided in the instruments evidencing and governing the DIP Facility;

(m) Any payment on, or application for authority to pay, an

5112816v11

pre-petition claim owing to terminated employees, lease rejection damages, other than those required to be paid with the proceeds of the DIP Facility pursuant to its terms, without the prior written consent of the DIP Agent;

(n) The automatic stay of Bankruptcy Code Section 362 shall be lifted so as to allow a third party to proceed against any assets of the Loan Parties with a value in excess of $100,000 in the aggregate;

(o) An examiner having enlarged powers under Section 1106(b) of the Bankruptcy Code shall be appointed, or the filing of a motion or other pleading requesting such relief which any Loan Party fails to timely oppose;

(p) A material adverse change shall occur in the condition or prospects, financial or otherwise, of any Loan Party;

(q) Any Loan Party shall, without the DIP Agent's prior written consent, take any affirmative, direct action that results in any current management person of such Loan Party ceasing to be employed by such Loan Party or incurring a material change in job duties;

(r) Other than as contemplated in the Budget, any Loan Party ceases operation of any portion of its business or takes any material action for the purpose of effecting the foregoing without the prior written consent of the DIP Agent;

(s) The failure of any Loan Party to comply with the Interim Financing Order, the Final Financing Order or the terms and conditions of DIP Financing documents;

(t) Judgments and attachments, insolvency, or voluntary or involuntary bankruptcy for any subsidiary of any Loan Party which is not currently disclosed as being subject to proceeding under the Bankruptcy Code;

(u) The failure to obtain a lien finding acceptable to the DIP Agent within five (5) days after the last day of the Challenge Period (or such later date as may be agreed to by the DIP Agent);

(v) The Final Financing Order shall not be entered within twenty-five (25) days after the Petition Date or such later date as to which the DIP Agent may agree;

(w) After entry thereof, either of the Sale Procedures Order or the Sale Order shall cease to be in full force and

5112816v11

|  | effect, shall have been reverse, stayed, vacated or subject to stay pending appeal or which shall have been modified or amended in a manner that materially and adversely affects the DIP Agent's and the DIP Lender's rights with respect to repayment of the DIP Facility; |
|  | (x) Without the prior written consent of the DIP Agent, any asset purchase agreement with respect to the 363 Sale is amended or modified; |
|  | (y) (i) the auction for the 363 Sale shall not have been held on or before December 9, 2015, (ii) the Bankruptcy Court has not entered the Sale Order on or before December 16, 2015, or (iii) the 363 Sale has not closed on or before December 18, 2015, or in the case of clauses (i), (ii) and (iii) of this clause (y), such later date(s) as to which the DIP Agent consents in writing in its sole discretion; |
|  | (z) The Loan Parties shall fail to disburse the sale proceeds to the DIP Agent contemporaneously with the closing of the 363 Sale; or |
|  | (aa) Any party in interest takes any action to challenge or otherwise interfere with the ability of the Pre-Petition Agent or Pre-Petition Lenders to credit bid in any sale of some or all of the Pre-Petition Collateral. |
| **Remedies:** | Upon the Termination Date or an Event of Default, the DIP Agent and the DIP Lender shall have customary remedies, including without limitation, the right to realize on all DIP Collateral and the right to exercise any remedy available under applicable law (including, the right to cause a liquidation under Chapter 11 in accordance with the liquidation budget), without the necessity of obtaining any further relief or order from the Bankruptcy Court; *provided*, *however*, that the DIP Agent shall provide the Loan Parties with five (5) days' written notice of the DIP Agent's intent to exercise such remedies and subject to the right of the Loan Parties or any committee appointed by the Bankruptcy Court to seek an injunction; *provided*, *further*, no such notice shall be required for, and nothing herein shall impair or restrict the DIP Agent's right regarding (i) the termination of further DIP Facility advances following the occurrence of an Event of Default, (ii) the termination of the Loan Parties' use of the DIP Collateral following an Event of Default, (iii) the right to demand repayment of the outstanding DIP Facility obligations following an Event of Default, or (iv) the collection and application of proceeds remitted to one or more lockbox |

20

| | |
|---|---|
| | accounts, controlled accounts or other accounts subject to the DIP Agent's control. Section 362 relief from the stay in favor of the DIP Agent and the DIP Lender shall be embodied in any order approving the DIP Facility and the use of cash collateral. |
| **Indemnification:** | The Loan Parties shall indemnify and hold PNC and its officers, directors, employees and agents (including all of their professionals) (each, an "***Indemnified Party***") harmless from and against any and all claims, damages, losses, liabilities and expenses (including, without limitation, all fees and disbursements of attorneys and other professionals) to which any Indemnified Party may become liable or which may be incurred by or asserted against any Indemnified Party, in each case in connection with or arising out of or by reason of any investigation, litigation or proceeding arising out of or relating to or in connection with the DIP Facility, the DIP Financing documents, any obligation, or any act, event or transaction related or attendant thereto or any use or intended use of the proceeds of the DIP Facility, except to the extent the same is found in a final, non-appealable judgment by a court of competent jurisdiction to have resulted from such Indemnified Party's gross negligence or willful misconduct. |
| **Governing Law:** | The DIP Financing documents would be prepared by counsel to DIP Agent and would be governed by the laws of the State of New York, without regard to principles of conflicts of law (other than Sections 5-1401 and 5-1402 of the New York General Obligations Law). |
| | While the Loan Parties are subject to proceedings under the Bankruptcy Code, the undersigned hereby irrevocably and unconditionally consent to the exclusive jurisdiction of and venue in the Bankruptcy Court for the resolution of all disputes arising under or in connection with the DIP Financing. If the Loan Parties are no longer subject to proceedings under the Bankruptcy Code, or if the Bankruptcy Court abstains from or otherwise declines to exercise its jurisdiction, the undersigned hereby irrevocably and unconditionally consent to the exclusive jurisdiction of and venue in any federal or state court with subject-matter jurisdiction in the borough of Manhattan, New York, New York. |

No Loan Party will disclose the contents of this letter (or that any Loan Party is having any discussions related to a possible loan including the status thereof, termination thereof, any decision on any Loan Party's or PNC's part to no longer consider any such DIP Financing or any terms, conditions, or other facts with respect thereof) to any third party, including, without

5112816v11

limitation, any financial institution or intermediary, without PNC's prior written consent, other than to any Loan Party's officers and advisors on a need-to-know basis.

Each Loan Party agrees to inform all such persons who receive information concerning this letter that such information is confidential and may not be disclosed to any other person. Further, until the transaction proposed herein is consummated or a determination is made by PNC not to pursue such transaction, each Loan Party agrees to negotiate exclusively with PNC regarding any financing the purpose of which is substantially the same as that of the proposed transaction.

This letter, which expires at 5:00 p.m., Central Daylight Time, on October 15, 2015 unless accepted by Parent on behalf of itself and the other Loan Parties prior to such time, shall be governed by and construed in accordance with the laws of the State of New York, without regard to principles of conflicts of law (other than Sections 5-1401 and 5-1402 of the New York General Obligations Law).

*[Remainder of page intentionally left blank.]*

5112816v11

*The contents hereof are strictly confidential and are only to be shared internally with the management of the Borrowers and legal counsel for the Borrowers, but not with any other third parties (including, but not limited to, any other potential debt or equity investors in the Borrowers or any of their affiliates). Any disclosure or use of the contents hereof in negotiations with other debt or equity investors is strictly prohibited. **This document does not reflect a commitment to lend or borrow by any party.***

Please do not hesitate to contact us if questions arise.

Very truly yours,

PNC BANK, NATIONAL ASSOCIATION

By: _____

Name: Robert Reaser

Title: Vice President


ACKNOWLEDGED AND AGREED:

A & B VALVE AND PIPING SYSTEMS, L.L.C.

By: _____

Name: Douglas J. Brickley

Title: Chief Restructuring Officer


KIMZEY CASING SERVICE, LLC

By: _____

Name: Douglas J. Brickley

Title: Chief Restructuring Officer


[Signature page to DIP Facility Term Sheet]