**Exhibit C**

**Bidding and Sale Procedures**

A & B Valve and Piping Systems, L.L.C., Kimzey Casing Service, LLC, and Sheffield Holdings, LP (collectively, "Debtors" and each a "Debtor")[1] filed chapter 11 bankruptcy cases in the United States Bankruptcy Court for the Western District of Louisiana (the "Bankruptcy Court"), which are jointly administered under Case No. 15-51336 (the "Lead Bankruptcy Case"). The Lead Bankruptcy Case is styled: *In re: A & B Valve and Piping Systems, L.L.C., et al.* (jointly administered).

Debtors are seeking to sell substantially all of their real/immovable property and buildings and improvements thereon and movable property, including, without limitation, certain pipes, valves, fittings, flanges, fasteners and other general oilfield supplies, all of which will be included in one or more schedules attached to a Purchase Agreement (defined below) (collectively, the "Assets" (and as the context dictates, each of the Debtor's Assets))[2].

Debtors determined, in their business judgment, that a sale of substantially all of the Assets pursuant to the competitive sale process as set forth herein is in the best interests of their estates. Any sale of the Assets will be subject to approval by the Bankruptcy Court pursuant to, among other sections, Section 363 of Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 et seq., as amended from time to time (the "Bankruptcy Code").

The Bidding and Sale Procedures (defined below) provided herein shall be employed with respect to the proposed sale of substantially all of the Assets as provided in the *Motion, With Supporting Authority, For Orders (I)(A) Authorizing and Approving Bidding and Sale Procedures, and (B) Authorizing and Approving Notice Procedures and Setting a Hearing Date for Sale Hearing, (II) Authorizing the Sale Free and Clear of All Liens, Claims and Interests, and (III) For Related Relief* (the "Motion") to be filed in the Lead Bankruptcy Case. Capitalized terms used but not defined herein shall have the meanings given to them in the Motion.

The Bidding and Sale Procedures set forth herein describe, among other things, the Assets available for sale, the manner in which prospective bidders may gain access to due diligence materials concerning the Assets, the manner and timing within which bids must be submitted, the evaluation of bids received, a potential auction, and a sale hearing to consider the sale of the Assets (the "Sale Hearing") (collectively, the "Bidding and Sale Procedures"). Debtors intend to consult with, among others, the Official Committee of Unsecured Creditors

---

[1] Sheffield GP, LLC ("Sheffield") also filed a chapter 11 bankruptcy case in the Bankruptcy Court that is jointly administered under the Lead Bankruptcy Case. Sheffield, however, is not included in the definition of Debtors in these Bidding and Sale Procedures as Sheffield has no assets to sell.

[2] These Bidding and Sale Procedures apply equally to each Debtor. For ease of reference herein, the Assets of each Debtor sought to be sold pursuant to the Motion (defined herein) will sometimes be collectively referred to as the "Assets" with the understanding that each Debtor's Assets will be offered for sale and sold pursuant to stand alone agreements, instruments, and documents entered into by each Debtor. Additionally, unless the context dictates otherwise in these Bidding and Sale Procedures, the plural shall include the singular and the singular shall include the plural.

Page 1 of 9

15-51336 - #85-3  File 10/24/15  Enter 10/24/15 10:10:35  Exhibit C - Bidding and Sale Procedures Pg 1 of 9

appointed in Debtors' bankruptcy case (the "Creditors' Committee") and PNC Bank, National Association ("PNC").

On November _____, 2015, the Bankruptcy Court entered an order approving the Bidding and Sale Procedures (the "Bidding and Sale Procedures Order") and setting the date for the Auction and Sale Hearing for December ___, 2015.

Debtors will seek an order from the Bankruptcy Court at the Sale Hearing for approval of the sale of their respective Assets to the Winning Bidder (defined below), free and clear of all liens, claims, and interests (the "Sale Order").

**"As Is, Where Is," No Warranties Whatsoever**

Debtors will sell the Assets on an "as is, where is" basis and without any representations or warranties, express or implied, of any kind, nature, or type given by Debtors, their agents or representatives, as will more fully provided in the Purchase Agreement.

**Debtors' Sale Efforts**

Debtors, in consultation with its advisors and officers and PNC and its counsel, will:

(a) determine the most effective manner in which to market the Assets in order to draw from the largest pool of interested persons;

(b) oversee the printing and distribution of all informational materials and other relevant sales documentation concerning the Assets;

(c) formulate and coordinate a competitive and decisive sales process;

(d) prepare, host, manage and staff a data room at a designated location and/or an electronic data room to enable prospective purchasers to conduct due diligence on the Assets; and

(e) provide any management presentations Debtors deem necessary to assist in due diligence efforts.

**Potential Bidder**

To participate in due diligence and bidding for the purchase of the Assets, each interested person or entity (a "Potential Bidder") must deliver to Debtors an executed confidentiality agreement prepared by Debtors. When received, Debtors will promptly transmit the executed confidentiality agreement to the following : (i) the Office of the United States Trustee; (ii) the Debtors and their counsel; (iii) PNC; (iv) 3K Partners, Ltd.; (v) Community Bank; (vi) Toyota Motor Credit; (vii) counsel for the unsecured creditors' committee; (viii) the twenty (20) largest unsecured creditors of A&B Valve and Piping Systems, L.L.C.; Kimzey Casing Service, LLC; Sheffield GP, LLC; and Sheffield Holdings, LP; and (ix) governmental agencies having a

regulatory or statutory interest in these cases (collectively, the "Notice Parties"). Notwithstanding the foregoing, PNC Bank, National Association is not required to execute a confidentiality agreement.

**Due Diligence**

Beginning on November _____, 2015 and until the Bid Deadline (defined below), Debtors will afford any Potential Bidder such due diligence access or additional information as may be reasonably requested by a Potential Bidder that Debtors, in their business judgment, determines to be reasonable and appropriate under the circumstances. A Potential Bidder will also be provided with the form of the Purchase Agreement. Debtors, in consultation with advisors, will coordinate diligence efforts such that multiple potential bidders have simultaneous access to due diligence materials and/or simultaneous attendance at any management presentations. Neither Debtors nor any of their representatives will be obligated to furnish any information relating to the Assets to any person other than to a Potential Bidder. Debtors make no representation or warranty to a Potential Bidder as to the information to be provided through the due diligence process or otherwise.

**Asset Purchase Agreement**

All bids for the Assets sought to be purchased must be made in accordance with the form of the Asset Purchase Agreement (the "Purchase Agreement") to be prepared. Debtors will provide an electronic copy of the form of the Purchase Agreement upon request.

**Bid Deadline**

A Potential Bidder who desires to make a bid shall deliver written and electronic copies of its bid to each applicable Debtor so as to be received no later 5:00 p.m. (CST) on December 2, 2015 (the "Bid Deadline"). Electronic delivery of the bids shall be emailed to the following email address: Ryan.Maupin@us.gt.com. When received, Debtors will promptly transmit bids to the Notice Parties. Debtors, after consultation with the Creditors Committee and with the permission of PNC, in its sole discretion, may extend the Bid Deadline once or successively, but they are not obligated to do so. If Debtors extend the Bid Deadline, Debtors will promptly notify all Potential Bidders and the Notice Parties of any such extension.

**Bid Requirements/Qualified Bidder**

In order to be considered a Qualified Bidder (defined below) for the purchase of the desired Assets, a Potential Bidder must:

(a) deliver to each applicable Debtor, a written offer ("Bid Letter"), which must provide and/or contain, at a minimum, all of the following (some of which may be contained in the Purchase Agreement):

(i) an written offer to purchase all or a part of the Assets from such Debtor at the purchase price and upon the terms and conditions as set forth in a Purchase Agreement (the "Sale Transaction");

(ii) an executed clean copy, together with a marked copy of the Purchase Agreement showing any proposed changes amendments and modifications to the Purchase Agreement (the "Marked Agreement"), which same shall be attached and made a part of the Bid Letter;

(iii) a written acknowledgment and agreement that the bid is irrevocable until three days following the Closing (defined below);

(iv) a written acknowledgment and agreement that the bid is not conditioned on, or subject to, (a) the outcome of unperformed due diligence by the Potential Bidder, and/or (b) obtaining financing;

(v) a list of any executory contracts or unexpired leases that are to be assumed and/or assigned under such bid and an affirmative statement of the Potential Bidder's commitment to pay any necessary cure amounts and provide adequate assurance of future performance under any such executory contract or unexpired leases to be assumed and/or assigned pursuant to such bid;

(vi) full and complete disclosure of the identity of each person (natural or juridical) that will be purchasing the Assets;

(vii) a deposit in the form of a wire transfer (to a bank account specified by Debtors and maintained with PNC), cashier's check or such other form acceptable to Debtors, payable to the order of Debtors (or such other party as Debtors may determine) in an amount equal to 10% of the bid (in USD) to be dealt with in accordance with the "Deposit" paragraph herein;

(viii) full and complete details of the proposed number of employees of Debtors, if any, who will be offered employment by the Qualified Bidder and any proposed measures associated with their continued employment;

(ix) a contact person with a telephone number and email address for the Qualified Bidder;

(x) a written acknowledgement and representation that the Potential Bidder:

(aa) has had an opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer;

(bb) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid;

(cc) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Assets or the completeness of any information provided in connection therewith, except as expressly stated in the Marked Agreement; and

(dd) is not entitled to any expense reimbursement or break-up fee or any other kind or type of fee or expense, in connection with its bid, and there is no broker or other entity claiming entitlement to a commission with respect to the Sale Transaction;

(xi) a written acknowledgment and agreement that the Potential Bidder submits to the core jurisdiction of the Bankruptcy Court and will waive the right to a jury trial, to the extent such right exists;

(xii) a written statement confirming that the representative of the Potential Bidder who will be attending the Auction (defined below) is, and at the Auction will be, duly authorized to both bid on behalf of the Potential Bidder at Auction;

(xiii) other information reasonably requested by Debtors

(b) A Potential Bidder shall accompany with its bid: (i) written evidence of cash or a firm, irrevocable commitment for financing, or other evidence of ability to consummate the proposed transaction, that will allow each Debtor, in consultation with the Notice Parties, to make a determination as to the Potential Bidder's financial and other capabilities to consummate the transaction contemplated by the Marked Agreement; and

(c) The bid shall be received by the Bid Deadline.

A bid from a Potential Bidder will be considered a "Qualified Bid" and such Potential Bidder will be deemed a "Qualified Bidder" if it meets all of the above requirements. Each Debtor reserves the right to reject a Qualified Bid if such bid, in such Debtor's business judgment materially deviates from the terms and conditions of the Purchase Agreement. Debtors shall consult with the Notice Parties before any bid is rejected. Any bid rejected by a Debtor shall not be a Qualified Bid. Each Debtor shall notify any Qualified Bidders in writing as to whether or not their bid constitutes an acceptable Qualified Bid promptly following the expiration of the Bid Deadline.

Debtors may negotiate with Qualified Bidders to clarify or enhance their bids ("Bid Negotiation Process"). The Bid Negotiation Process shall end at 4:00 p.m. CST on December 4, 2015 (the "Bid Negotiation Deadline"). Any such clarifications or enhancements shall be promptly provided by Debtors to the other Qualified Bidders and to the Notice Parties.

**Credit Bidders**

A credit bidder is a person holding allowed secured claims against the respective Assets ("Credit Bidder"). PNC is a Qualified Bidder and shall be allowed to credit bid the amount of its

secured claims. Debtors reserve the right to determine the existence of other Credit Bidders and the amount such other Credit Bidders may credit bid. Any secured creditor with a security interest or lien on the Assets junior to the security interest and lien of PNC may credit bid the allowed amount of its secured claim only after payment in full of PNC's pre-petition and post-petition secured claims in cash. Other than PNC, a Credit Bidder will be deemed a Qualified Bidder, provided such Credit Bidder complies with all necessary requisites to be deemed a Qualified Bidder. A Credit Bidder, however, shall not be required to post a Deposit.

**Selection of Lead Bidder/Secondary Bidder**

After completing any Bid Negotiation Process, each applicable Debtor, in consultation with the Notice Parties, shall designate the highest and best offer based on the bid amount and other factors including, without limitation, terms and conditions set forth in the Marked Agreement, scope of the Assets purchased, factors affecting the speed and certainty of closure, the claims likely to be created by such bid in relation to others, the number of existing employees of each applicable Debtor to be offered employment post-closing and any other factor(s) deemed relevant by each applicable Debtor and the Notice Parties (the "Bid Determination Procedures"). The highest and best offer shall be designated as the ("Lead Bidder"). Each applicable Debtor will also identify the second best offer in accordance with the Bid Determination Procedures, which shall be designated as the ("Secondary Bid") and the Qualified Bidder making such bid, the ("Secondary Bidder").

Debtors shall notify all Qualified Bidders, prior to the Sale Hearing, of the designation of the Lead Bid and the Secondary Bid and the amount and material terms of such bids. Debtors shall file a notice of the designation of the Lead Bid and the Secondary Bid with the Court, including a copy of such bids, no later than 5:00 p.m. (CST) on December 7, 2015.

**Sale Hearing/Potential Auction**

At the outset of the Sale Hearing, Debtors shall identify the Lead Bid and Lead Bidder and the Secondary Bid and the Secondary Bidder. Debtors shall offer to the other Qualified Bidders the opportunity to state on the record whether they wish to enhance their bids to top the Lead Bid (a "Topping Bid").

If any other Qualified Bidder, including the Secondary Bidder, expresses an interest in bidding against the Lead Bid by submitting a Topping Bid, then each Debtor shall conduct a court-supervised auction with respect to the Assets to be purchased pursuant to the Topping Bid ("Auction"). If no Qualified Bidders express an interest in providing a Topping Bid, no Auction will be conducted.

If the Auction is conducted, it shall be conducted as follows:

(a) Bids may be made for all or a portion of the Assets to be purchased pursuant to the Topping Bid;

(b) All Bids shall be made is cash (in USD) only (no stock, debenture, etc.), except that secured creditors may credit bid the allowed amount of its secured claim to the extent set forth herein;

(c) All Qualified Bidders, or their authorized representatives, must be physically present in the Bankruptcy Court at the time of the Sale Hearing;

(d) Only Qualified Bidders may present bids or overbids at any time during the Auction and only a Qualified Bidder can be a purchaser of the Assets under these Bidding and Sale Procedures;

(e) The Court shall then conduct an open Auction for the Qualified Bidders with respect to the purchase of the Assets, calling for incremental bids from the Qualified Bidders participating in the Auction, with minimum overbid increments being in an amount not less than two percent (2%) of the then highest auction bid (in USD) with respect to the Assets;

(f) Qualified Bidders shall be permitted to caucus privately among themselves (but not with other Qualified Bidders) at any time, Qualified Bidder's request; provided, however, the Court will impose uniform reasonable time restrictions on such caucuses so that the Auction may continue and be completed in an orderly and timely manner; and

(g) Debtors, in consultation with the Notice Parties, may adopt such other rules for the Auction (including rules that may depart from those set forth herein) that it anticipates will result in the highest or otherwise best value for the Assets and that are not inconsistent with any Bankruptcy Court order, provided that any changed or additional rules for the Auction are not materially inconsistent with these Bidding and Sale Procedures and are communicated to all participants at or prior to the Auction.

**Winning Bid/Back-Up Bid**

At the conclusion of any Auction, the highest and best bid for the respective Assets, as determined by Debtors in consultation with the Notice Parties, as consistent with the Bidding Procedures, shall be designated as the ("Winning Bid") and the second highest and best bid as the ("Back-Up Bid"). If no Auction is conducted, the Lead Bid shall be designated as the Winning Bid and the Secondary Bid shall be designated as the Back-Up Bid. The Qualified Bidder making the Winning Bid is referred to as the ("Winning Bidder") and the Qualified Bidder making the Back-Up Bid is referred to as the ("Back-Up Bidder")

The proposed Winning Bidder and the Back-Up Bidder shall physically appear at the Sale Hearing held in the Bankruptcy Court immediately after the Auction, or if no Auction, on the date and time set for the Sale Hearing and be prepared to testify and offer evidence in support of the Winning Bid and its ability to close in a timely manner and provide adequate assurance of its future performance under any and all contracts and leases to be assumed and/or assigned as part of the Sale Transaction. Each Debtor shall accept a Winning Bid only when (i) the

Bankruptcy Court has approved the Winning Bid and Winning Bidder, and (ii) the Sale Order approving such Winning Bid has been docketed.

The Winning Bidder shall be the Purchaser under the Purchase Agreement.

**Back-Up Bid**

If, for any reason, the Winning Bidder fails to consummate the purchase of the Assets, the Back-Up Bid automatically will be deemed to be the highest and best bid and be treated as the Successful Bid. Debtors shall be authorized to effect the sale, assignment and transfer of the applicable Assets to the Back-Up Bidder as soon as is commercially reasonable without further order of the Bankruptcy Court as if such bidder were deemed the Winning Bidder.

**Deposits**

The Deposit posted by the Winning Bidder, except for a Credit Bidder, shall be credited against the purchase price of the Assets.

Except as provided herein or in the Bidding and Sale Procedures Order, Deposits shall be returned ten (10) business days after the Bankruptcy Court enters the Sale Order, except for deposits submitted by (i) the Winning Bidder, (ii) the Back-Up Bidder and (iii) any bidder that has forfeited its deposit as set forth below. The Deposit to Back-Up Bidder shall be returned to such Back-Up Bidder within three (3) business days of the consummation of the Sale Transaction with the Winning Bidder.

A Qualified Bidder will forfeit its Deposit (i) if the Qualified Bidder withdraws or modifies (in a manner determined by Debtors to be less favorable) its Qualified Bid before the Bankruptcy Court approves the Winning Bid or (ii) if the Qualified Bidder is the Winning Bidder and (a) modifies or withdraws Qualified Bid without Debtors' consent (in consultation with the Notice Parties) or (b) materially breaches the terms and conditions of its Qualified Bid. Deposits shall be construed as liquidated damages and not a penalty and shall constitute the sole remedy and recourse against any Qualified Bidder, except for the remedy of specific performance, and/or (iii) upon a showing that the Qualified Bidder participated in the Auction in bad faith or otherwise violated Section 363 or any other applicable provision of the Bankruptcy Code.

**Reservation of Rights**

Debtors reserve the right, after consultation with the Notice Parties, but subject to the terms of the DIP Credit Agreement to: (i) determine which bidders are Qualified Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal irrespective of whether such proposal constitutes the highest gross price submitted; (iv) reject any bid that is (a) inadequate or insufficient; (b) not submitted in conformity with the requirements of the Bidding and Sale Procedures Order or the requirements of the Bankruptcy Code or the Purchase

Agreement; or (c) contrary to the best interests of Debtors and their estates; (v) impose additional terms and conditions with respect to any or all Qualified Bidders that are not materially inconsistent with these Bidding and Sale Procedures and any order of the Bankruptcy Court; (vi) extend the deadlines set forth herein; (vii) modify the Auction and Bidding and Sale Procedures to ensure the greater recovery to Debtor and their estates in a manner not materially inconsistent with the Bidding and Sale Procedures Order; (viii) withdraw from sale any Assets at any time and make subsequent attempts to market the same; and (ix) adjourn or cancel the Auction and/or the Sale Hearing without further notice.

**Closing**

The closing on the Sale Transaction the ("Closing") shall in accordance with the terms and conditions of the Sale Order or the mutual agreement between the applicable Debtor and the Purchaser.

**Consultation Rights**

Any consultation rights afforded herein by Debtors to any one or more of the Notice Parties shall not vest a veto right in any one or more of the other Notice Parties over Debtors' decisions.